# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza-16th Floor, Brookyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

*Eastern District*
Peter Kirchheimer
*Attorney-in-Charge*

September 16, 2014

ECF and Hand Delivery
The Honorable I. Leo Glasser
Senior United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

     RE:   <u>**U.S.A. v. Jaime Corsino Aguilar**</u>, **13 CR 707 (ILG)**

Your Honor:

I write on behalf of my client, Jaime Corsino Aguilar, who is presently scheduled to appear before You for sentencing on **Monday, September 22, 2014 at 11:30 a.m.**

The Presentence Report (PSR) and Advisory Guideline Calculations

I received the Pre-Sentence Report(PSR) on September 8, 2014 and was able to review it with Mr. Aguilar through a Spanish Interpreter, at the Metropolitan Detention, yesterday. We make the following *objections, corrections and comments:*

In the **<u>Identyifying Data</u>** on **page 2** of the PSR, it is reported that Mr. Aguilar was born on January 30, 1964 in Mexico and is a 50 year old citizen of Mexico. In fact, as reported by Mr. Aguilar, in paragraph 46 of the PSR, he was born on August 3, 1953 in Lima, Peru, where he remains a citizen and is 60 years of age.

At **paragraph 12**, of the PSR, the **Base Offense Level** for his conviction of Illegal Re-entry After Deportation is increased by 16 levels based on assertion that his prior conviction for Attempted Burglary in the State of Nevada was a "crime of violence." We object!

**United States Sentencing Guidelines Manual, §2L1.2 *Commentary Application Note 1(B)(iii)*,** defines "Crime of violence," as, "any of the following offences undr fedreal, state, or local law: Murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate ex (iii) "Crime of violence" means any of the following offenses under federal, state, or tension of credit, burglary of a dwelling, or any other offense

under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."

The **Nevada Revised Statutes 205.060(1): Burglary Definition** provides that, "Except as otherwise provided in subsection 5, a person who, by day or night, enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, vehicle, vehicle trailer, semitrailer or house trailer, airplane, glider, boat or railroad car, with the intent to commit grand or petit larceny, assault or battery on any person or any felony, or to obtain money or property by false pretenses, is guilty of burglary.

Mr. Aguilar was convicted of attempted burglary under Nevada statute NRS 205.060, which defines burglary expansively, and includes entering buildings that are not dwellings with the intent to only commit grand or petit larceny, even in the absence of any element to use, attempt to use, or threaten to use physical force. Nev. Rev. Stat. § 205.060.  The underlying facts of the case are described in **paragraph 28** of the PSR.

Mr. Aguilar's Nevada conviction does not count as a "crime of violence" under USSG § 2L1.2(b)(1)(A)(iii). Under Guideline 2L1.2(b)(1), the only possible options to count Mr. Aguilar's Nevada offense as a "crime of violence" would be to qualify it as a "burglary of a dwelling" or an offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 2L1.2(b)(1) cmt. 1(B)(iii).

To determine whether a given crime fits within a predicate offense under the Guidelines, the Second Circuit generally requires a "categorical" approach, which looks to "the statutory definition of the prior offense of conviction rather than to the underlying facts of that offense.'" *United States v. Folkes*, 622 F.3d 152, 157 (2d Cir. 2010) (quoting *United States v. Brown*, 514 F.3d 256, 265 (2d Cir. 2008)). The Nevada burglary statute, involving the entering of *any* building, cannot categorically fit within "burglary of a dwelling," because "plainly, 'buildings' includes structures other than 'dwellings.'" *Id.* (citing *United States v. Brown*, 514 F.3d 256, 265 (2d Cir. 2008)).

The Second Circuit has alsoheld that where a statute's language is "divisible" such that the statute can be violated by *either* a predicate *or* a non-predicate offense to a sentencing enhancement, then courts should use a "modified categorical approach" to determine "which part of the statute of prior conviction" a "defendant was convicted of violating." *United States v.Beardsley*, 691 F.3d 252, 264 (2d Cir. 2012) (citing *United States v. Baker*, 665 F.3d 51, 55 (2d Cir. 2012)). The Nevada statute's "intent" specifications are written thus, because one can violate the statute by entering a building with the intent to commit larceny *or* the intent to obtain money by false pretenses *or* the intent to commit assault or battery. Only the latter involves physical force. A modified categorical approach asks the court to determine which part of the Nevada statute Mr. Aguilar violated by analyzing charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms. *Johnson v. United States*, 559 U.S. 133, 144 (2010). Because the information in his case indicates he violated the statutory phrase regarding "larceny," not "assault or battery,"

his offense cannot be said to have had as "an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 2L1.2(b)(1) cmt. 1(B)(iii).

Mr. Aguilar was not convicted of a "burglary of a dwelling," and thus cannot be said to have committed a "crime of violence" under the illegal reentry sentencing guideline for that reason. "'In determining whether a given crime fits within the definition of the relevant predicate offenses, we take a 'categorical' approach; that is, we generally look only to the statutory definition of the prior offense of conviction rather than to the underlying facts of that offense.'" *United States v. Folkes*, 622 F.3d 152, 157 (2d Cir. 2010) (quoting *United States v. Brown*, 514 F.3d 256, 265 (2d Cir. 2008)).

Under the Nevada law, a person is guilty of burglary when he enters "any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, *or other building*, … with the intent to commit grand or petit larceny, assault or battery on any person or any felony, or to obtain money or property by false pretenses…" Nev. Rev. Stat. § 205.060 (emphasis added). This statute is very similar to N.Y. Penal Law § 140.20, which defines burglary in the third degree as "enter[ing] or remain[ing] unlawfully in a building with intent to commit a crime therein." The Second Circuit, in *United States v. Folkes*, held that N.Y. Penal Law § 140.20 "obvious[ly]" cannot categorically qualify as a crime of violence for purposes of sentencing under the illegal reentry guideline. 622 F.3d 152, 158 (2d Cir. 2010) (citing *United States v. Brown*, 514 F.3d 256, 265 (2d Cir. 2008)).

The Second Circuit's reasoning of why N.Y. Penal Law § 140.20 could not qualify as a crime of violence under the illegal reentry guideline squarely applies here: "Plainly, 'building[s]' includes structures other than 'dwelling[s]'; hence, the New York crime of third-degree burglary does not categorically fit within … 'burglary of a dwelling.'" *United States v. Brown*, 514 F.3d 256, 265 (2d Cir. 2008). Like the New York statute, the domain of the Nevada statute also includes structures other than "dwellings": it includes "shop[s], warehouse[s], store[s], mill[s], barn[s], stable[s], outhouse[s], or *other building[s]*." Nev. Rev. Stat. § 205.060 (emphasis added).Because the reach of the Nevada law plainly includes structures other than dwellings, it too cannot categorically qualify as a crime of violence under the illegal reentry guideline.

Neither was Mr. Aguilar convicted of an offense, "that has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 2L1.2(b0(1) cmt.1(B)(iii). While courts usually must take a categorical approach when determining whether a given crime fits within the definition of the relevant predicate offenses, a unique problem arises when a statute is written such that there are a variety of ways in which a person can violate the statute, some of which do *not* contain an element that would be a predicate for a sentencing enhancement The Second Circuit has held that a "modified categorical inquiry" is appropriate in those instances, and only those instances, to determine "which part of the statute of prior conviction" a "defendant was convicted of violating." *United States v. Beardsley*, 691 F.3d 252, 264 (2d Cir. 2012) (quoting *United States v. Baker*, 665 F.3d 51, 55 (2d Cir. 2012) (internal quotation marks omitted); *see also Akinsade v. Holder*, 678 F.3d 138, 144 (2d Cir.

2012) ("[W]here a statute is 'divisible,' … application of a 'modified categorical' approach is appropriate."). Under the modified categorical approach, the facts underlying the prior conviction are considered if they are based upon "adequate judicial record evidence." *Shepard v. United States*, 544 U.S. 13, 16, 20 (2005). Adequate judicial record evidence includes "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Johnson v. United States*, 559 U.S. 133, 144 (2010) (citing *Chambers v. United States*, 129 S. Ct. 687, 691; *Shepard v. United States,* 544 U.S. 13, 26 (2005) (plurality opinion); *Taylor v. United States,* 495 U.S. 575, 602 (1990)).

"In such cases, the modified categorical approach allows a court to 'determine which statutory phrase was the basis for the conviction' by consulting *Shepard*-approved documents from the trial record." *United States v. Beardsley*, 691 F.3d 252, 274 (2d Cir. 2012) (quoting *Johnson,* 559 U.S. at 144); *accord Gonzalez–Terrazas,* 529 F.3d 293, 298 (5th Cir. 2008) ("[W]e use the modified categorical approach only to determine of which subsection of a statute a defendant was convicted." (internal quotation marks omitted)). In other words, a court must determine whether a defendant violated the statute of conviction's predicate or non-predicate offense. *United States v. Beardsley*, 691 F.3d 252, 264 (2d Cir. 2012).

The Nevada statute is divisible because it "contains statutory phrases that cover several generic crimes, some of which require [the use, attempted use, or threatened use of physical force] and some of which do not." *See Johnson v. United States*, 559 U.S. 133, 144 (2010); USSG § 2L1.2(b)(1) cmt. 1(B)(iii). Under the Nevada statute, a person is guilty of burglary if he enters a building with "the intent to commit grand or petit larceny, assault or battery on any person or any felony, or to obtain money or property by false pretenses." Nev. Rev. Stat. § 205.060. Each of those statutory phrases provides a separate basis for a burglary conviction: a person could enter a building with the intent to commit grand larceny; or he could enter a building with the intent to commit petit larceny; or he could enter a building with intent to commit assault; or he could enter a building with intent to commit battery; and so on.

Thus, the modified categorical approach is appropriate in order "to determine *which statutory phrase* was the basis for the conviction." *Johnson v. United States*, 559 U.S. 133, 144 (2010) (emphasis added). Only some of those statutory phrases require the use of physical force; the others do not. *See Johnson v. United States*, 559 U.S. 133, 144 (2010) (citing *Nijhawan v. Holder*, 129 S. Ct. 2293, 2302 (2009)) (noting that the Court has approved the "modified categorical approach" when the law under which the defendant was convicted "contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not"). Specifically, entering a building with the intent to commit "assault" or "battery" are the only statutory phrases that involve the use, attempted use, or threatened use of physical force. *See* Nev. Rev. Stat. § 205.060; USSG § 2L1.2(b)(1) cmt. 1(B)(iii). The "conditions" for a modified categorical approach are thus present here: the Nevada statute is "divisible in such a way that some offenses it creates could be singled out as predicate offenses." *United States v. Beardsley*, 691 F.3d 252, 274 (2d Cir. 2012).

-4-

A review of the information filed Mr. Aguilar's Nevada case, *see* Discovery Bates Number 58-59, (attached as **Exhibit A)** and to which he pleaded guilty, shows that the statutory phrase "with the intent to commit … larceny" was the "basis of his conviction." *Johnson v. United States*, 559 U.S. 133, 144 (2010). The phrase, "with the intent to commit … assault or battery on any person," the only phrases in NRS 205.060 that have "as an element the use, attempted use, or threatened use of physical force against the person of another," USSG § 2L1.2(b)(1) cmt. 1(B)(iii), were not a basis for Mr. Aguilar's conviction. Thus, his conviction cannot be counted as a "crime of violence" as having involved an offense that has as an element the use, attempted use, or threatened use of physical force against the person of another.

Therefore, Mr. Aguilar's Nevada conviction fits no definition of a "crime of violence," found in Comment 1(B)(iii) to USSG § 2L1.2(b)(1), and does not support the 16-level enhancement described in USSG § 2L1.2(b)(1)(A). We do concede that an 8-level enhancement for an "aggravated felony" pursuant to subsection (C) would apply instead.

In the context of **paragraph 51**, Mr. Aguilar believes that he explained that his most recent return to the United States was just to be with his ailing son while he sought treatment.

Finally, at **paragraph 69**, of the PSR, based upon the preceding arguments, the **Guideline Provisions** should reflect a total offense level of 13 and an advisory guideline range of 30 to 37 months.

Beyond this, we also do believe that, there is even more in "the nature and circumstances of the offense and the history and characteristics of the defendant," that would make a sentence for Mr. Aguilar below the calculated sentencing guideline range, "reasonable" and consistent with the purposes of 18 U.S.C. §3553 (a). *See United States v. Booker*, 125 S. Ct. 738 (2005), *United States v. Crosby*, 397 F.3d 103 (2nd Cir. 2005) .

## I.   18 U.S.C. 3553A Analysis

### A. Factors to consider in determining sentence.

18 U.S.C. §3553(a) requires consideration of the statutory sentencing factors and a sentence "sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in §3553(a)(2). Non-incarceratory sentences in non-violent cases are explicitly encouraged by Congress. 28 U.S.C. 994(j) (affirming the "general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense.").

### 1. 18 U.S.C. §3553(a)(1).  The nature and circumstances of the offence and history and characteristics of the defendant;

As the Court now knows, Mr. Aguilar is a 60 year old man from Peru who grew up in "lower socioeconomic circumstances." His forays to the United States have been marked by menial low paying jobs between unemployment and essentially petty crimes of survival as an

illegal alien. His most recent trip was to help his ailing son to get medical treatment that he could not get at home. His own physical condition is also deteriorating.

**2. 18 U.S.C. §3553(a)(2). The need for the sentence imposed--**

**(A) *To reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense.* 18 U.S.C. §3553(a)(2)(A).**

The crime is obviously serious, although there are few federal felonies about which anything else could be said. It is also a essentially a status crime.

**(B) *To afford adequate deterrence to criminal conduct and* (C) *to protect the public from further crimes of this defendant.* 18 U.S.C. §3553(a)(2)(B) and (C).**

As a result of the arrest that led to this prosecution, Mr. Aguilar has been in custody for over a year with most of that time, if not all, being only credited to his state charge. He also faces additional time in Immigration custody while he awaits inevitable deportation again. Given his age and deteriorating health, he has expressed feelings that he just can't go through this anymore and will be content to make the best of his life in Peru.

**(D) *to provide the defendant with needed educational, or vocational training, medical care, or other correctional treatment in the most effective manner.* 18 U.S.C. §3553(a)(2)(D).**

Because of Mr. Aguilar's status as an alien and the existence of an immigration detainer, he will *only* be able to obtain true rehabilitative treatment *outside* of the BOP. This militates in favor of a shorter sentence and quick deportation.

The BOP's release and rehabilitative programs are currently unavailable to non-citizen prisoners with a immigration detainers. It is well-established that the BOP precludes non-citizens from participating in drug treatment programs, such as the Residential Drug Abuse Treatment Program (RDAP), which allows inmates to benefit from drug and alcohol treatment, also receive a sentence discount of up to one year.[1] Non-citizens are similarly deemed ineligible for "programs such as Shock incarceration, work release, or other programs that may offer ways of cutting incarceration time."[2] They are also precluded from participating in programs such as the Federal Prison Industries (FPI) program, correctional program which helps prisoners acquire the job skills and training necessary to successfully transition them to becoming law-abiding and contributing

---

[1]   Nora V. Demleitner, *Terms of Imprisonment: Treating the Noncitizen Offender Equally*, 21 FED. SENT'G REP. 174, 175 (2009).

[2] Manuel D. Vargas, *A Colloquium on Developing Collaborations Among, Courts, Law School Clinical Programs, & the Practicing Bar: Immigration Consequences of Guilty Pleas or Convictions*, 30 N.Y.U. REV. L. & SOC. CHANGE 701, 713 (2006).

members of society.[3]  This program would be particularly useful for this defendant, whose age and health render him less marketable in the labor-intensive fields he has worked in the past. The BOP also appears to prohibit, or at least discourage, non-citizens from entering educational programs, as the BOP has assessed that the impending deportation significantly reduces the value of the inmates' need to learn English and obtain a GED.[4]

Thus, the existence of the immigration detainer effectively prevents the Court from fashioning a sentence that would incorporate the rehabilitative purpose of sentencing by Congress in 18 USC 3553(a)(2)(D).

By contrast, a sentence lower than the guidelines would permit expeditious deportation of Mr. Aguilar, allowing him to seek treatment in his country of origin.

**3. 18 U.S.C. §3553(a)(3).**

The Court must also consider the kinds of sentences available.  There is no mandatory minimum sentence for this offense, so all sentences are available.  While the Court has significant power to order rehabilitation as a condition of supervised release, there is no factual basis to believe that any of the United States Probation Department's resources can be used for a defendant who is deported to another country.

**4. 18 U.S.C. §3553(a)(4).**

The Court is required to consider the advisory Sentencing Guidelines.

**5.  18 U.S.C. §3553(a)(5).**

The Court must consider whether there are any pertinent policy statements issued by the sentencing commission that would affect the sentence.  There are none particularly appropriate in this case.

**6. 18 U.S.C. §3553(a)(6).**

---

[3] Unicor Federal Prison Industries, Inc., http://www.bop.gov/inmate_programs/unicor.jsp (last visited December 4, 2009.

[4] Nora V. Demleitner, *Terms of Imprisonment: Treating the Noncitizen Offender Equally*, 21 FED. SENT'G REP. 174 (2009); see also, Anne Roder, *Strengthening Correctional Education for Adults*, THE WORKING POOR FAMILIES PROJECT 6 (Summer 2009), *available at* http://www.workingpoorfamilies.org/pdfs/policybrief-summer09.pdf (stating, "In 1997, only 1.2 percent of state prison inmates participated in English as a Second Language (ESL) classes.).  *But see* FEDERAL BUREAU OF PRISONS, PROGRAM STATEMENT: GOOD CONDUCT TIME UNDER THE PRISON LITIGATION REFORM ACT, P5884.03, GOOD CONDUCT TIME § 523.20(D) (Dec. 5, 2005) (alien under final order of removal eligible for but not required to participate in literacy or GED program to earn annual good time award).

The Court must seek to avoid unwarranted sentencing disparity among defendants, while bearing in mind that the individualized application of the sentencing factors is the goal. *United States v. Dorvee*, 616 F.3d 174 (2nd Cir 2010).

**7. 18 U.S.C. §3553(a)(7).**

Finally, the Court must determine if there are any victims in the case requiring restitution. There are none.

**II. Conclusion.**

With all of these factors and circumstances in mind, I must, respectfully, urge Your Honor to  heed the so-called "parsimony clause" of 3553(a) and be as lenient as possible in imposing , "a sentence sufficient, but not greater than necessary," to allow Mr. Aguilar  to move on his life  as soon as reasonably possible.

Thank You for Your attention to and consideration in this matter.

Respectfully Submitted,

MICHAEL P. PADDEN, ESQ.
718-330-1240

cc:    AUSA Marcia Maria Henry

US PO John J. Lanigan

Jaime Corsino Aguilar
MDC Reg. #83085-053

-8-

# Exhibit A

1  **INFO**
   STEWART L. BELL
2  DISTRICT ATTORNEY
   Nevada Bar #000477
3  200 S. Third Street
   Las Vegas, Nevada 89155
4  (702) 455-4711
   Attorney for Plaintiff
5
   I.A.  12-15-98
6  9:00 A.M.
   J. BUCHANAN, ESQ.
7

FILED

DEC 10  11 02 AM '98

DISTRICT COURT   CLERK
CLARK COUNTY, NEVADA

8  THE STATE OF NEVADA,            )
9                    Plaintiff,    )
10             -vs-                )     Case No.  C 155343
11  CARLOS GONZALES SANCHEZ,       )     Dept. No.  XIV
    #1520871                       )     Docket    T
12  JAIME COENIERS, aka            )
    Jaime Corsino,                 )
13  #1520872                       )
    ANA PATRICIA GONZALES-GONZALES, aka )
14  Ana Patricia Gonzales,         )
    #1520873                       )
15                                 )
16                    Defendants.  )
17  _____)     I N F O R M A T I O N

18  STATE OF NEVADA   )
                      )ss:
19  COUNTY OF CLARK   )

20        STEWART L. BELL, District Attorney within and for the County of Clark, State o

21  Nevada, in the name and by the authority of the State of Nevada, informs the Court:

22        That CARLOS GONZALES SANCHEZ, JAIME COENIERS, aka Jaime Corsino, an

23  ANA PATRICIA GONZALES-GONZALES, aka Ana Patricia Gonzales, the Defendants abov

24  named, having committed the crime of **ATTEMPT BURGLARY (Felony - NRS 193.330**

25  **205.060)**, on or about the 19th day of November, 1998, within the County of Clark, State o

26  Nevada, contrary to the form, force and effect of statutes in such cases made and provided, an

27  against the peace and dignity of the State of Nevada, did then and there wilfully, unlawfully, an

28  feloniously attempt to enter, with intent to commit larceny, that certain building occupied b

CORSINO AGUILAR 000058

1    MGM GRAND HOTEL AND CASINO, located at 3799 Las Vegas Boulevard South, La

2    Vegas, Clark County, Nevada.

3                                         STEWART L. BELL
                                          DISTRICT ATTORNEY
4                                         Nevada Bar #000477

5

6                                    BY  *Bernard B. Zadrowski*

7                                         BERNARD B. ZADROWSKI
                                          Deputy District Attorney
8                                         Nevada Bar #006545

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                                       CLERK OF THE COURT

26
     DA#98F16401A-C/da                   APR 23 2009
27   LVMPD EV#9811192206
     ATT BURG - F                         CERTIFIED COPY
28   (TK5)                               DOCUMENT ATTACHED IS A
                                         TRUE AND CORRECT COPY
                                         OF THE DOCUMENT ON FILE
                                              -2-

CORSINO AGUILAR 000059